# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 6:24-cv-00203-ADA-DTG |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 6

I.    SpaceX is likely to succeed on the merits of its constitutional claims. ........................... 6

    A.    NLRB ALJs are unconstitutionally insulated from removal. ................................ 6

    B.    The NLRB's Board Members are unconstitutionally insulated from
        removal. ................................................................................................................. 8

II.   SpaceX will suffer irreparable harm without a preliminary injunction. ......................... 12

    A.    The unconstitutionality of the NLRB proceedings inflicts irreparable
        harm. ..................................................................................................................... 12

    B.    The unconstitutional NLRB proceedings inflict irreparable harm to
        SpaceX's business interests in the two challenged agreements. ......................... 14

    C.    The unconstitutional NLRB proceedings inflict irreparable economic
        harm. ..................................................................................................................... 14

III.  The balance of harms and public interest favor a preliminary injunction. ..................... 15

IV.   Severability arguments cannot defeat SpaceX's right to a preliminary injunction. ........ 16

CONCLUSION.................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ...................................................14

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)...............................................................................................3, 13, 14, 15

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ...........................................................................................16

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021) ...........................................................................................13

*Collins v. Dep't of the Treasury*,
No. 22-20632, 2023 WL 6630307 (5th Cir. Oct. 12, 2023) ...............................................13

*Collins v. Yellen*,
141 S. Ct. 1761 (2021)...............................................................................................10, 11

*Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) ...........................................................................................13

*Consumers' Research v. Consumer Product Safety Commission*,
91 F.4th 342 (5th Cir. 2024) ......................................................................................11, 12

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ......................................................................................12, 16

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) ...........................................................................................12

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975)...................................................................................................16, 17

*Elrod v. Burns*,
427 U.S. 347 (1976).........................................................................................................12

*Exela Enter. Sols., Inc. v. NLRB*,
32 F.4th 436 (5th Cir. 2022) ...................................................................................3, 9, 10

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010)............................................................................................... *passim*

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935)................................................................*passim*

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023)................................2, 7, 8

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)..........................................................16

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022)......................................................6, 16

*Lucia v. SEC*,
    585 U.S. 237 (2018)..................................................................8, 17

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
    760 F.2d 618 (5th Cir. 1985)..........................................................17

*Myers v. United States*,
    272 U.S. 52 (1926)......................................................................6

*Nken v. Holder*,
    556 U.S. 418 (2009)....................................................................15

*NLRB v. United Food & Com. Workers Union, Loc. 23*,
    484 U.S. 112 (1987)....................................................................3, 9

*Overstreet v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010)........................................................3, 9

*Ramspeck v. Federal Trial Exam'rs Conf.*,
    345 U.S. 128 (1953)....................................................................17

*Seila L. LLC v. CFPB*,
    591 U.S. 197 (2020)................................................................*passim*

*United States v. Texas*,
    599 U.S. 670 (2023)......................................................................9

*Wenner v. Tex. Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997)........................................................17

*Westrock Servs., Inc.*,
    366 N.L.R.B. No. 157, slip op. (Aug. 6, 2018)..................................7

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)......................................................................1, 6

**Statutes**

5 U.S.C. § 1202(d) ..................................................................................................2, 7

5 U.S.C. § 7521(a) ..................................................................................................2, 7

29 U.S.C. § 153(a) .........................................................................................2, 7, 8, 9

29 U.S.C. § 153(d) ..................................................................................................3, 9

29 U.S.C. § 159 ...........................................................................................................9

29 U.S.C. § 160 ...........................................................................................................9

29 U.S.C. § 160(j) ...........................................................................................3, 9, 10

**Other Authorities**

5 C.F.R. § 1200.1 .....................................................................................................17

Fed. R. Civ. P. 65(a) ...................................................................................................1

11A Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 2948.1 (3d ed. 2023) ......................................................................12

Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off.
    & Civ. Serv., 95th Cong. 824 (1978) ...................................................................17

Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited,
    Heart Rediscovered*, 23 Duq. L. Rev. 1059, 1069 (1985).......................................18

Nat'l Labor Relations Bd., Legislative History of the National Labor
    Relations Act of 1935, at 1428 (1949) ...............................................................18

Space Exploration Technologies Corp. ("SpaceX") respectfully moves for an order preliminarily enjoining ongoing administrative proceedings against SpaceX, to be entered against the National Labor Relations Board ("NLRB"), Jennifer Abruzzo, Lauren M. McFerran, Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, and the Administrative Law Judge ("ALJ") who will soon be assigned to preside over the administrative hearing (collectively, "Defendants"). FED. R. CIV. P. 65(a). The NLRB already obliged SpaceX to file its answer in the administrative proceeding on April 17, 2024. The administrative proceeding is unconstitutionally structured, and SpaceX needs this Court's intervention now as administrative discovery could issue at any point—compounding the irreparable constitutional injury by forcing SpaceX to continue to participate in an unconstitutionally structured administrative process. Furthermore, the alleged unfair labor practices that the NLRB's proceedings seek to prohibit involve two types of agreements that serve important business purposes now being undermined by the uncertainty surrounding the regulatory proceedings. Without the requested relief, SpaceX will suffer irreparable harm as described below.

## INTRODUCTION

SpaceX filed this action to avoid serious and irreparable injuries that it will otherwise suffer from being subjected to an unconstitutional administrative proceeding. Defendants are currently prosecuting and presiding over such a proceeding accusing SpaceX of violating federal law. Because the structure of that proceeding violates the United States Constitution under Supreme Court and Fifth Circuit precedent, SpaceX respectfully requests an order halting the NLRB proceedings unless and until the constitutional defects are remedied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). SpaceX satisfies each of these requirements.

SpaceX is likely to succeed in establishing that the structure of the NLRB proceedings violates the Constitution in at least two ways.

*First*, an ALJ who is unconstitutionally exercising substantial executive functions while being insulated from presidential control in violation of Article II of the Constitution is conducting an administrative proceeding against SpaceX. *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). Indeed, three different layers of removal protections impede the President's ability to remove the NLRB's ALJs: (1) while an agency—here the NLRB—may take steps to remove an ALJ, it may do so "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")]," 5 U.S.C. § 7521(a); (2) the President may remove members of the MSPB only for "inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d); and (3) the President may remove NLRB board members only "for neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a). In *Jarkesy*, the Fifth Circuit held that a matching set of removal restrictions was unconstitutional as applied to ALJs of the Securities Exchange Commission ("SEC"). 34 F.4th at 463–64. The same conclusion follows here.

*Second*, the Members who lead the NLRB are also unconstitutionally insulated from removal by the President. Article II requires that the President maintain "unrestricted removal power" over all federal officials "who wield executive power," subject to only two exceptions. *Seila L. LLC v. CFPB*, 591 U.S. 197, 215, 238 (2020). The potentially relevant exception here— "for multimember expert agencies that do not wield substantial executive power," *id.* at 218—is inapplicable because the NLRB *does* wield substantial executive power. As just one example, Section 10(j) of the National Labor Relations Act ("NLRA") gives Board Members "the power, upon issuance of [an administrative] complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate

temporary relief or restraining order." 29 U.S.C. § 160(j). This "[p]etition power under § 10(j) is prosecutorial in nature" and thus a quintessential form of executive power. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).  The NLRB also has a distinctive structure from other federal agencies, whereby authority is divided between the Members and the General Counsel, who unlike the Members is a politically accountable officer. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022); *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 128–29 (1987).

SpaceX will be irreparably harmed by these violations of its constitutional rights unless the Court halts the NLRB proceedings until this case proceeds to a final decision granting "relief sufficient to ensure that the [labor law] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010). Even if the Court remedies these structural defects in its final judgment, it cannot undo the injury SpaceX will suffer in the meantime through "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" in "proceedings [that] violate the separation of powers." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Under binding Supreme Court precedent, such harm is "a here-and-now injury" that "is impossible to remedy once the proceeding is over." *Id.* (citation omitted). SpaceX will also suffer irreparable injuries to its business interests if there is uncertainty about whether the administrative proceedings will be moving forward. Both types of agreements challenged by the NLRB serve important business interests both for SpaceX and current and former employees in providing clarity and certainty governing the parties' relationship. The prospect that the NLRB could invalidate these agreements or render certain provisions unenforceable through an unconstitutional agency proceeding creates irreparable harm. It is vital to preventing harm to SpaceX's business interests to know whether the NLRB proceeding

will be moving forward sooner rather than later. And on top of its constitutional injury and injuries to its business interests, SpaceX will suffer the practical harms of undergoing an extensive administrative proceeding that distracts from its important missions, including launching satellites critical to U.S. defense and intelligence agencies and flying NASA astronauts to space, as well as a loss of goodwill from being branded a violator of labor law through an unconstitutionally structured proceeding. These harms also will be irreparable even if the Court ultimately corrects the NLRB's structural flaws prospectively. The balance of equities and public interest weigh strongly in SpaceX's favor for similar reasons.

Because SpaceX satisfies the preliminary injunction factors for its four claims, this Court should grant SpaceX's motion and preliminarily enjoin the NLRB proceedings against it.

## BACKGROUND

SpaceX was founded in 2002 with the audacious goal of making life multiplanetary. Mlodzianowski Decl. ¶ 4(attached as Exhibit A). Today, SpaceX operates an integrated space launch business and a global satellite-based internet service known as Starlink. *Id.* ¶¶5-8. It employs over 14,000 people in facilities around the country, including in its rocket development and test facility in McGregor, Texas; its Starlink manufacturing facility in Bastrop, Texas; its Starbase development and manufacturing facility in Boca Chica, Texas; its human spaceflight mission operations and integration facility in Houston, Texas; and its various facilities in Florida, Washington State, California, Connecticut, and Washington, D.C. *Id.* ¶ 9.

SpaceX's missions serve, among others, NASA, U.S. government national security agencies, commercial customers from around the world, and international space agencies. *Id.* ¶¶ 6, 8. NASA selected Starship—the largest rocket ever built—to return American astronauts to the Moon. *Id.* ¶ 7. Sending crewed spacecraft to the International Space Station, the Moon, and Mars (and beyond) requires the utmost vigilance, discipline, technical excellence, and teamwork of

SpaceX personnel across all its facilities—as does building and maintaining its constellation of thousands of Starlink satellites and serving millions of Starlink customers in more than 70 countries around the world. *See id.* ¶¶ 5-8. To ensure this work is performed safely and timely, SpaceX has implemented safety and attendance policies that it expects all employees to follow. *See* Complaint, Dkt. 1, ¶ 25.

In the nearly seven months between November 29, 2021, and June 14, 2022, a former SpaceX employee (the "Charging Party")[1] committed for four violations of SpaceX's safety policies, including for causing temporary damage from a reckless operation of a forklift, and fifteen violations of SpaceX's attendance policies. *Id.* ¶ 25. On June 21, 2022, SpaceX gave notice to the Charging Party that their employment was being terminated for failure to comply with SpaceX's policies. *Id.* ¶ 27. SpaceX offered the Charging Party a separation agreement similar to those it offers terminated employees nationwide. *Id.*

On December 20, 2022, the Charging Party filed a charge with the NLRB alleging that the termination of employment constituted unfair labor practices in violation of the NLRA. *Id.* ¶28. The NLRB sought SpaceX's response to the Charges. *Id.* ¶ 29. SpaceX submitted its position statement and supporting evidence refuting the allegations on March 17, 2023. *Id.*

On March 20, 2024, fifteen months after the charge was filed, the Regional Director for Region 19 issued a complaint in response to the charge, an NLRB case number 19-CA-309274, and a notice that an administrative hearing would occur before an ALJ on October 29, 2024. *Id.*

---

[1] Because the identity of the Charging Party is irrelevant to this litigation, SpaceX sees no reason to use the Charging Party's name where the NLRB has chosen to redact it from the public version of the administrative complaint. For similar reasons, SpaceX is submitting the public version with this Motion (attached as Exhibit B). SpaceX does not believe that any redacted information is relevant in resolving this motion, but will promptly submit the unredacted version of the administrative complaint if the Court requests.

¶ 30. The administrative complaint found no defects with SpaceX's decision to terminate Charging Party's employment, and instead challenges SpaceX's nationwide use of certain separation and arbitration agreements. *Id.* ¶ 31; *see generally* Administrative Complaint (attached as Exhibit B). SpaceX filed its answer to the administrative complaint on April 17, 2024. *See* NLRB Public Administrative Docket, 19-CA-309274 (attached as Exhibit C).[2]

## ARGUMENT

Preliminary injunctive relief is proper when a movant establishes (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also, e.g.*, *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies all four factors.

**I.      SpaceX is likely to succeed on the merits of its constitutional claims.**

**A.      NLRB ALJs are unconstitutionally insulated from removal.**

Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L.*, 591 U.S. at 203 (citation omitted). The president does not execute federal law "alone and unaided." *Myers v. United States*, 272 U.S. 52, 117 (1926). "He must execute them by the assistance of subordinates." *Id.* But because the executive responsibility remains vested in the President, the officers of every administrative agency—including "independent" ones—must be subject to presidential oversight. *See Free Enter.*, 561 U.S. at 513–14. The Constitution thus requires that the President have the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L.*, 591 U.S. at 204.

SpaceX is likely to succeed on the merits of its constitutional challenge to the NLRB ALJs'

---

[2]Available at: https://www.nlrb.gov/case/19-CA-309274.

removal protections. Fifth Circuit precedent unequivocally requires this conclusion. In *Jarkesy*, 34 F.4th at 465, the Fifth Circuit held that the indistinguishable "statutory removal restrictions" for SEC ALJs "are unconstitutional." Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" *Jarkesy*, 34 F.4th at 464. And the Fifth Circuit determined that SEC Commissioners and MSPB members themselves "can only be removed by the President for cause." *Id.*; *see* 5 U.S.C. § 1202(d) (MSPB members). The SEC ALJs were "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464. But these multiple "layers of for-cause protection"—for the SEC Commissioners and the MSPB members—unconstitutionally "stand in the President's way." *Id.* at 465.

*Jarkesy* is dispositive. There is no relevant difference between SEC ALJs and NLRB ALJs. Both are "inferior officers" who "have substantial authority" in agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by "at least two layers of for-cause protection" that "stand in the President's way." *Jarkesy*, 34 F.4th at 465. Indeed, 5 U.S.C. § 7521(a), which allows an employing agency to remove its ALJs only when the MSPB finds good cause, applies equally to both sets of ALJs; and 5 U.S.C. § 1202(d) applies equally to the MSPB members in both cases as well. The NLRA also explicitly creates removal protection for Board Members: they are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). So, like the SEC ALJs, NLRB ALJs are unconstitutionally insulated from the President's oversight by multiple layers of removal protections. *See Jarkesy*, 34 F.4th at 464.

The *Jarkesy* holding on SEC ALJs is binding on this Court and flows directly from prior Supreme Court precedent. *See id.* at 464–65 (applying *Free Enter.*, 561 U.S. at 495–508, and *Lucia v. SEC*, 585 U.S. 237, 247-50 (2018)). Supreme Court precedent establishes that multi-layer removal-protection violates Article II because it "not only protects [the inferior officers] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Free Enter.*, 561 U.S. at 495. Under this binding precedent, SpaceX is likely to—indeed must—prevail on the merits of this claim.

### B.      The NLRB's Board Members are unconstitutionally insulated from removal.

The removal protections of the NLRB's Board Members are unconstitutional as well. Unlike ALJs, the NLRB Members are not merely inferior officers; they are *principal* officers who exercise substantial executive power in administering and enforcing the NLRA. Though they are appointed by the President and confirmed by the Senate as principal officers, the President is deprived of his constitutional power to oversee their work because the President can remove them only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). Recent Supreme Court precedent strongly suggests that this strict removal protection violates Article II of the Constitution given the substantial executive power that the Board wields.

As noted, removal restrictions for executive branch officials are generally unconstitutional. For principal officers, the Supreme Court has recognized only one narrow exception "for multimember expert agencies that do not wield substantial executive power." *Seila L.*, 591 U.S. at 218. This exception originated in *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935), which determined that the Commissioners of the Federal Trade Commission ("FTC") did not at the time exercise "executive power in the constitutional sense." *Id.* at 628.

Whatever might have been true of FTC Commissioners in 1935, NLRB Members exercise substantial executive power through their administrative, policymaking, and prosecutorial

authority. They enforce the NLRA in many ways, including, for example, determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160. They also have authority to appoint inferior officers including the executive secretary, attorneys, examiners, regional directors, ALJs, and others. *Id.* § 154.

The Board Members' executive functions are clearly seen in NLRA Section 10(j), which gives the Board quintessentially prosecutorial power: "[t]he Board shall have power . . . to petition [a] United States district court . . . for appropriate temporary relief or restraining order" in response to an alleged unfair labor practice. *Id.* § 160(j). As the Fifth Circuit has found, this petition power "is prosecutorial in nature." *Overstreet*, 625 F.3d at 852. And prosecuting someone for alleged violations of federal law lies at the heart of the Constitution's concept of Executive Power. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678–79 (2023); *Seila L.*, 140 S. Ct. at 2200.

Additionally, the removal protections for NLRB Members are even stricter than those that insulated the FTC Commissioners in 1935 (and still do). The latter are removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). NLRB Members, in contrast, are removable only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency, 29 U.S.C. § 153(a).

Moreover, unlike other federal agencies, the NLRB has a distinctive structure that divides agency authority between its Members and its General Counsel, who is a politically accountable agency official responsible for deciding which cases to bring before the NLRB Members. *See* 29 U.S.C. § 153(d); *Exela*, 32 F.4th at 441; *United Food & Com. Workers Union*, 484 U.S. at 128–29. Cases discussing this split agency structure confirm the NLRB Members wield substantial executive power.

For example, the Fifth Circuit in *Exela* held that the NLRB Members' statutory removal protections did not extend to the General Counsel because of the President's prerogative to remove officers exercising substantial executive power. The *Exela* petitioner argued that, because the General Counsel wields power similar to and delegated by Members, the Fifth Circuit should extend the Members' statutory removal protections to the General Counsel, even though the NLRA lacked any statutory removal protection for the General Counsel. 32 F.4th at 441–46. Because the NLRA creates the "Board to execute quasi-legislative, quasi-judicial functions," and the General Counsel "to perform quintessentially prosecutorial functions," the Fifth Circuit determined the logic of *Humphrey's Executor* would not extend to the General Counsel in part because the "position is not judicial or legislative, but core to the executive function." *Id.* at 443–44. Like the General Counsel, NLRB Members <u>also</u> exercise prosecutorial functions, as demonstrated by their 10(j) authority under the NLRA to authorize petitioning the federal courts for an injunction. *See* 29 U.S.C. § 160(j). As the Fifth Circuit has held that the parallel exercise of prosecutorial discretion by the General Counsel is "core to the executive function," it follows that the Section 10(j) prosecutorial discretion must also be "core to the executive function" when exercised by the Members.[3]

For both reasons, allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers*, 272 U.S. at 135)).

---

[3] *Exela* did not address the Board Members' prosecutorial 10(j) authority when discussing the Board's other quasi-legislative and quasi-judicial functions.

This Court should not expand *Humphrey's Executor* when the Supreme Court has repeatedly declined to do so. For example, in *Free Enterprise*, the Court held that *Humphrey's Executor* does not apply when inferior officers are shielded by two layers of removal protections. *Free Enter.*, 461 U.S. at 493. In *Seila Law* and *Collins*, the Court confirmed that *Humphrey's Executor* does not apply when an independent agency is led by a single director. *Seila L.*, 591 U.S. at 204–05 (2020); *Collins*, 141 S. Ct. at 1783–84. Although neither decision overruled *Humphrey's Executor*, its reasoning has been called into serious question. *See, e.g.*, *Seila L.*, 591 U.S. at 216 n.2; *id.* at 2217 (Thomas, J., concurring in part and dissenting in part). Last month, the Fifth Circuit recognized as much in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024). Despite acknowledging that "the logic of *Humphrey*'s may have been overtaken" and suggesting that the case struck the panel "as out of step with prevailing Supreme Court sentiment," the majority extended *Humphrey's Executor* from the FTC to the CPSC over Judge Jones's partial dissent. *Id.* at 346; *see also id.* at 356–58 (Jones, J., concurring in part and dissenting in part).

Regardless of the Fifth Circuit's fractured analysis of the removal protections insulating the CPSC members from removal, *Consumers' Research* does not address agencies like the NLRB—whose distinctive structure divides prosecutorial authority between its Members (in the Section 10(j) context) and its politically accountable General Counsel (in unfair labor practice proceedings). *See supra.* And there is no reason here to further expand *Humphrey's Executor* yet a step beyond the type of agency presented in *Consumers' Research*.

The NLRB is not an agency structurally identical to the FTC as it existed in *Humphrey's Executor* or the CPSC in *Consumers' Research*. By extending the logic of other decisions addressing the NLRB's unique structural aspects, such as finding that both the General Counsel

and the Members exercise substantial executive power over different parts of the agency, confirm these cases do not dictate the outcome here. This Court is not constrained by *Consumers' Research* and should not further extend *Humphrey's Executor* to an agency whose structure differs from the FTC.

However, while recognizing that only the Supreme Court has the prerogative to overrule its own decisions, SpaceX expressly preserves the additional argument that *Humphrey's Executor* should be overturned, particularly given more recent precedent. *Id.* But the key point here is that there is no basis to expand *Humphrey's Executor* to NLRB Members, who wield greater executive power than the 1935 FTC yet are more protected from presidential oversight. SpaceX is likely to prevail on this claim, too.

## II.   SpaceX will suffer irreparable harm without a preliminary injunction.

Without preliminary relief from this Court, SpaceX will be irreparably harmed by being subjected to an unconstitutional proceeding before insufficiently accountable agency officials. None of these constitutional injuries would be remediable after the administrative process. Unless this Court grants a preliminary injunction blocking the NLRB proceedings, SpaceX will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

### A.   The unconstitutionality of the NLRB proceedings inflicts irreparable harm.

Deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2023) (where "deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary"). The

Supreme Court recently confirmed that irreparable harm is inflicted on a party that is subject to a proceeding before a decisionmaker who is unconstitutionally insulated from presidential oversight. *Axon*, 598 U.S. at 191. The Court recognized that "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "impossible to remedy once the proceeding is over." *Id*. An appellate court "could of course vacate the [agency]'s order," but a "separation-of-powers claim" challenging unconstitutional removal protections "is not about that order." *Id*. Such a claim "is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* And once the proceeding has concluded, a court is unable to remedy that harm: "[a] proceeding that has already happened cannot be undone," and so "[j]udicial review . . . would come too late to be meaningful." *Id*. at 191–92. This reasoning is directly applicable to both of SpaceX's removal-protection claims.

The NLRB may point to inapposite cases where courts have refused to invalidate agency action taken by unconstitutionally insulated Executive Branch officials. *See, e.g., Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616, 625 (5th Cir. 2022) (plaintiffs sought to enjoin enforcement of already-promulgated regulation); *Collins v. Dep't of the Treasury*, No. 22-20632, 2023 WL 6630307, at *7 (5th Cir. Oct. 12, 2023). Such cases are not on-point because they did not reject the availability of relief from the continuing burdens of ongoing unconstitutional proceedings. The Supreme Court has made clear that a challenge to an agency's "power to proceed at all" differs from a challenge to "action[s] [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. Being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker," again, is a constitutional injury that "cannot be undone" after the fact. *Id*. at 191; *see also Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who

is unconstitutionally insulated from presidential control"); *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding an injunction of an administrative adjudication pending appeal appropriate based on *Axon* because the plaintiff was likely to prevail on claim that officers were unlawfully "shielded from removal"). Accordingly, each removal-protection problem poses its own irreparable harm.

**B.     The unconstitutional NLRB proceedings inflict irreparable harm to SpaceX's business interests in the two challenged agreements.**

SpaceX is also incurring irreparable harm because the administrative proceedings are undermining SpaceX's business in the challenged arbitration and separation agreements. These agreements serve important business interests and provide certainty to both SpaceX and the current and former SpaceX employees who are parties to the agreements. Mlodzianowski Decl., Ex. A, ¶¶ 12-23. The pendency of an unconstitutional administrative proceeding that seeks to cast doubt on the enforceability of certain provisions in those agreements is causing irreparable harm by undermining the purpose of the agreements. *Id.* ¶¶ 21-23. This harm requires expedient resolution of the preliminary injunction motion, as each day that passes with the possibility of new developments in an unconstitutional administration proceeding, creates a cloud of additional uncertainty and irreparable harm to these important business interests. Thus, SpaceX will suffer irreparable harm unless this motion is quickly adjudicated.

**C.     The unconstitutional NLRB proceedings inflict irreparable economic harm.**

While the unconstitutional nature of the proceeding and harm to the business interests in the two challenged agreements is enough to establish irreparable harm, there are also real-world burdens of participating in that proceeding that constitute additional irreparable harm. Responding to the charges and preparing for the upcoming hearing has involved and will continue to involve extensive preparation by SpaceX and its counsel. Mlodzianowski Decl., Ex. A, ¶¶ 24-25. This

comes at a time when SpaceX is preparing for numerous challenging missions, including national security missions for U.S. national security agencies, flying astronauts for NASA and civilian spaceflight participants, developing the Starship to enable NASA astronauts' return to the moon, and continuing to deploy the Starlink constellation. *See id.* ¶¶ 26-27.

Having to prepare for and participate in the NLRB proceedings—relating to this charge and others currently pending—imposes significant burdens on employee time and company resources. *Id.* ¶¶ 24-27. In addition, the existence of the NLRB's complaint and media coverage of the proceedings are likely to hurt SpaceX's reputation and thus its ability to compete for and retrain talent. SpaceX values its reputation as a leading engineering employer, which is undermined while the government publicly (and falsely) portrays SpaceX as having engaged in unfair labor practices. *Id.* ¶¶ 28-29. The federal government often uses these financial and reputational harms to its advantage. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way."). But there is no way to recover the lost time, money, or talent caused by these proceedings, even if SpaceX is eventually successful in getting an administrative rehearing that avoids the constitutional defects identified above. Without a stay of these proceedings until the Court can award a constitutionally adequate remedy, SpaceX will suffer concrete harm that will not be recoverable.

## III.   The balance of harms and public interest favor a preliminary injunction.

SpaceX satisfies the two remaining preliminary injunctive factors as well. Where, as here, the government is a defendant, the balance of harms and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors tilt strongly in favor of SpaceX. Given its likelihood of success on the merits, an injunction would not harm Defendants because the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency

action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Nor would an injunction "disserve the public interest." *Louisiana*, 55 F.4th at 1022; *see also BST Holdings*, 17 F.4th at 618; *Daniels Health Scis.*, 710 F.3d at 585 ("[T]he public is served when the law is followed."); *League of Women Voters*, 838 F.3d at 12. It is not in the public interest to have an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people," *Free Enter.*, 561 U.S. at 499, or that infringes the constitutional imperative that "the judiciary remain[] truly distinct from . . . the executive," *Stern*, 564 U.S. at 483 (alteration in original) (quoting THE FEDERALIST No. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)).

Even if the Court grants the injunction but ultimately determines the proceedings are constitutional (or fixes the constitutional defects), Defendants could then proceed with the NLRB proceedings at that time. The NLRB took fifteen months from December 20, 2022, until March 20, 2024, to file a complaint on the employees' charges. Compl. ¶¶ 27–30. A brief additional delay would cause any harm.

## IV. Severability arguments cannot defeat SpaceX's right to a preliminary injunction.

Defendants will likely argue that severing the relevant removal protections could fix the constitutional defects. As an initial matter, the possibility that severance *might* be appropriate to consider when determining how to craft the final remedy does not undercut SpaceX's right to a preliminary injunction to stop the ongoing constitutional harm now. A preliminary injunction is the only tool available at this juncture because there is no such thing as a preliminary declaration. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"). A preliminary injunction is necessary to preserve the status quo and

protect the Court's ability to later provide meaningful permanent relief. *Id.*; *see also Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

But in any event, there is no appropriate way to sever any of the removal protections here to remedy the constitutional problems with the NLRB's structure. The NLRB ALJ conducting the administrative proceedings against SpaceX have three sets of removal protections, and it is not at all clear which, if any, Congress would be willing to give up.

First, the removal protections that the APA gives to ALJs are "a central part of the Act's overall scheme" to protect against the troubling questions that arise from an agency's commingling of adjudicative and prosecutorial functions. *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part); *Ramspeck v. Federal Trial Exam'rs Conf.*, 345 U.S. 128, 130 (1953). Undoing those protections would plainly undermine congressional intent.

Next, to further insulate the ALJs, Congress eventually created the MSPB in the Civil Service Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111, and provisions designed to "confer upon [MSPB] members a tenure akin to that of the Federal judiciary." Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv., 95th Cong. 824 (1978); *see* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court."). Severing the MSPB removal protections would override Congress's choices, too.

Finally, Congress designed the NLRB to be an independent agency insulated from

presidential, and thus political, control. Against the backdrop of a prior labor board (the National Labor Board) that was seen as ineffective because of its reliance on the Justice Department to enforce its orders and that answered directly to the President, Congress designed the NLRB to be independent of political pressures. *See* Michael J. Heilman, *The National Labor Relations Act at Fifty: Roots Revisited, Heart Rediscovered*, 23 DUQ. L. REV. 1059, 1069 (1985); *see also* NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT OF 1935, at 1428 (1949). The independence of the agency was thus a driving feature of the NLRB's establishment.

To provide relief on SpaceX's claim against the ALJ's removal protections, striking just one of these statutory directives would not suffice because there would still be two layers of removal protection left. The Court would have to hold at least two—if not three—of the removal protections unconstitutional. Yet each of the three removal protections reflects Congress's conscious and well-expressed intent to infuse administrative proceedings with political independence (rather than political accountability) at multiple levels. And it is difficult, and perhaps impossible, to figure out which removal protections Congress would have sought to preserve in fixing the constitutional problems SpaceX has identified. To avoid circumventing the legislature, severability should be addressed by Congress, not the courts. Until then, SpaceX's right to avoid unconstitutional administrative proceedings should be protected.

## CONCLUSION

For all these reasons, the Court should enter a preliminary injunction against the NLRB's administrative proceedings against SpaceX.

Dated: April 25, 2024   Respectfully submitted,

       By:  *s/ Catherine L. Eschbach*

       **MORGAN LEWIS & BOCKIUS LLP**
       Catherine L. Eschbach
       Texas Bar No. 24097665
       1000 Louisiana Street, Suite 4000
       Houston, TX 77002-5006
       catherine.eschbach@morganlewis.com
       T. (713) 890-5719
       F. (713) 890-5001

       Harry I. Johnson, III (*pro hac vice*)
       2049 Century Park East, Suite 700
       Los Angeles, CA 90067-3109
       T. (310) 907-1000

       Michael E. Kenneally (*pro hac vice*)
       Amanda L. Salz (*pro hac vice pending*)
       1111 Pennsylvania Avenue, N.W.
       Washington, DC  20004-2541
       michael.kenneally@morganlewis.com
       amanda.salz@morganlewis.com
       T. (202) 739-3000

       *Attorneys for Plaintiff*
       *Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7(g), I hereby certify that on April 25, 2024, I conferred with counsel for the Defendants via email, who represented that Defendants oppose the foregoing motion.

<u>s/ <i>Catherine L. Eschbach</i></u>
Catherine L. Eschbach

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

<u>s/ *Catherine L. Eschbach*</u>
Catherine L. Eschbach
