# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> **Plaintiff,** <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> **Defendants.** | Civil Action No. 6:24-cv-00203-ADA-DTG |

**DECLARATION OF BRYANNE-MICHELLE MLODZIANOWSKI IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, I, Bryanne-Michelle Mlodzianowski, declare as follows:

1. I am Bryanne-Michelle Mlodzianowski at Space Exploration Technologies Corp. ("SpaceX").

2. In my role as Director in Human Resources, I manage SpaceX's Human Resources Department at SpaceX's McGregor, Texas facility.

3. I am currently based at the McGregor, Texas facility and have been employed there since October 2, 2009.

4. SpaceX was founded in 2002 in a warehouse in El Segundo, California with the audacious goal of making life multiplanetary.

5. Today, the company operates two primary business lines in furtherance of that objective: (i) space launch services and (ii) providing a high-speed satellite-based connectivity—including internet services through its Starlink mark—to customers around the world.

6. For its space launch services, SpaceX designs, manufactures, and launches advanced rockets and spacecraft to deliver payloads to space, including satellites; cargo for the International Space Station; astronauts for NASA and its international partners; and other human spaceflight participants. Customers of SpaceX's launch business include NASA and various U.S. government defense and intelligence agencies, foreign governments, domestic and international satellite operators and telecommunications companies, scientific and educational institutions, and others. As of today, SpaceX is the world's leading launch-services provider. In 2023, SpaceX completed 96 Falcon missions, including missions for a variety of U.S. government and commercial customers, deployment of the Starlink constellation, and three test launches of the company's new Starship launch system.

7. Starship, the most powerful rocket ever built, will be fully reusable and will enable humans to travel to the Moon and Mars. NASA has selected Starship to deliver the next American astronauts to and from the surface of the Moon as part of the Artemis program.

8. SpaceX's satellite business designs, manufactures, launches, and operates advanced satellites. This business includes Starlink, the world's most advanced satellite-based internet service. The Starlink constellation—already the world's largest at more than 4,500 satellites and counting—and ground infrastructure around the globe deliver low-latency, high-speed internet capable of supporting streaming, video calls, and more. This business also includes Starshield, a separate, highly secure satellite network for U.S. government entities.

9. SpaceX's accomplishments have enabled the company to grow rapidly, especially in recent years. The company currently employs more than 14,000 people in facilities around the country, including in its rocket development facility in McGregor, Texas; Starbase manufacturing and launch facility in Boca Chica, Texas; Starlink manufacturing facility in Bastrop, Texas; human spaceflight mission operations and integration facility Houston, Texas; and its various facilities in Florida, Washington State, California, Connecticut, and Washington, D.C.

10. In 2003, shortly after its founding, SpaceX opened its rocket development and test facility in McGregor, Texas. SpaceX has over 600 employees based at its McGregor facility and is the town's largest employer.

11. SpaceX's management and senior decisionmakers are based at different facilities around the country, including SpaceX's McGregor and Boca Chica facilities. For example, seven of SpaceX's twenty-five Vice Presidents are based in Texas. Four are based at Starbase, and

3

three at the McGregor facility. Additionally, Gwynne Shotwell, SpaceX's President and Chief Operating Officer, is based at the McGregor facility.

12.     I understand that the National Labor Relations Board ("NLRB") has accused SpaceX of alleged unfair labor practices in connection with SpaceX's use of a now-superseded arbitration agreements that new hires were required to sign and its use of a now-superseded separation agreements with certain departing employees. These challenged agreements were in use at SpaceX's facilities nationwide, and I understand the NLRB is challenging these agreements on a nationwide basis.

13.     SpaceX's practice is that all new employees sign an arbitration agreement upon hire.

14.     Based on review of SpaceX's records, as of June 21, 2022, more than 550 individuals were employed at the McGregor facility and would have entered into the challenged arbitration agreements upon hire. More than 150 employees have been hired at the McGregor facility since that date and have entered into arbitration agreements upon joining SpaceX.

15.     SpaceX also offered certain employees who left their employment with the challenged SpaceX separation agreements.

16.     Based on review of SpaceX's records, between June 21, 2022, and the filing of the complaint in this action on April 19, 2024, SpaceX generated separation documentation for 25 individuals leaving employment at the McGregor facility. Of the documents, SpaceX's records show that at least 15 individuals at the McGregor facility accepted a separation agreement and 3 individuals at the McGregor facility declined a separation agreement.

17.     The challenged arbitration agreements serve an important business purpose in providing certainty in clearly defining the rights and obligations of SpaceX and its current and

former employees in resolving any disputes between the parties. Because of the nature of SpaceX's business, and the fast-moving and time-sensitive projects on which employees work, it is especially important to fairly, quickly, and economically resolve any disputes through the arbitration mechanism and to avoid protracted litigation in court. Ongoing conflict without timely resolution—be it with current or former employees—presents a possible threat to SpaceX's and its employees' ability to remain on mission and reach the important milestones they aim to achieve.

18. The specific provision of the challenged arbitration agreements at issue in the NLRB case—a provision that ensures "monetary relief or recovery" for the signatory employee comes about through arbitration and not any administrative process—serves an important business purpose of ensuring that arbitration (the forum agreed to by the parties) is the sole forum that will determine monetary damages.

19. Generally, the challenged separation agreements serve important business purposes. They provide certainty in clearly defining the rights and obligations of SpaceX and former employees who accept the agreement. They facilitate the terms of employee's separation from SpaceX and ensure both the departing employee and SpaceX are satisfied with the terms of departure. And they provide certainty regarding the end of the employment relationship and help ensure that any remaining issues between the parties are resolved satisfactorily to all parties.

20. The specific provisions of the challenged separation agreements at issue in the NLRB case also serve important business purposes. For example, the confidentiality provisions allow the parties to negotiate and agree on the other terms that they might not be able to otherwise. The non-disparagement provisions protect the business reputation of SpaceX and avoid future disputes. The participation limits provisions protect SpaceX from payment of a

5

separation amount, only to have the signatory former employee help generate future claims or litigation against SpaceX. These are just some of the specific business purposes of the challenged separation agreements.

21. Any uncertainty about the scope or enforceability of the challenged arbitration and separation agreements, which have already been agreed to by all parties, undermines the important business purpose which they serve.

22. I understand that SpaceX asserts that the Administrative Law Judge and NLRB members that will adjudicate the lawfulness of the arbitration and separation agreements are unconstitutionally insulated from presidential control. Unless the ongoing unconstitutional administrative proceedings before the NLRB are enjoined, they will continue to threaten the certainty and clarity of these agreements, which will negatively impact not just SpaceX but also its current and former employees.

23. There is a need to quickly resolve whether the NLRB proceeding can move forward as the agency is currently structured. SpaceX's business interests in the challenged agreements are already being undermined. And there is no way to protect those business interests until the issue of whether the administrative proceedings can continue as currently structured is resolved.

24. Moreover, I understand that participating in this administrative proceeding—whether SpaceX wins or loses—will result in very significant litigation costs, including attorney's fees. These costs will never be recovered from the NLRB or the United States. I also understand that SpaceX has already incurred significant expenses defending itself against the NLRB's charges.

25. Preparation for this hearing will require the time and attention of many SpaceX personnel and officers, because, among other things, SpaceX will have to introduce evidence of the business purpose of the agreements and their provisions.

26. The employee time required for preparation and participation in the NLRB hearing will impose major burdens on SpaceX's resources and will distract its personnel from their usual work for the company, including upcoming missions that are tremendously important to both SpaceX and the goals the United States.

27. For example, SpaceX personnel around the country are intensely focused on the Starship development effort, with test flights scheduled over the coming months from its launch site at its Starbase facility in Boca Chica, Texas. All of the Raptor engines that power Starship—39 for each rocket—are tested in McGregor. Additionally, all the Merlin engines that power the Falcon launch vehicle —10 for each rocket—are also tested in McGregor. These and other missions over the next several months will require the utmost attention from SpaceX personnel at its facilities across the country.

28. Beyond the cost and diversion of employee time, the administrative proceedings are likely to impact SpaceX's business reputation and goodwill. The accusations by the Board and its prosecutors falsely brand SpaceX as a violator of federal labor law. These accusations have drawn significant public and media attention, which I expect to renew with each new major development in the proceedings until they are stayed or dismissed.

29. It is reasonable to believe this attention harms SpaceX in the competition for talent, employee retention, and customer confidence in SpaceX's ability to accomplish its mission. Competition for engineering talent is fierce in the aerospace industry. SpaceX's competitors include scores of companies, including multiple "traditional" (e.g., United Launch

Alliance, a joint venture between Boeing and Lockheed Martin) and "new space" (e.g., Rocket Lab) launch services providers, satellite manufacturers, telecommunications companies, and many more. The NLRB prosecution's public claim that SpaceX is a violator of federal labor law likely disadvantages SpaceX relative to its competitors in its continued efforts to attract and hire the most talented people on Earth.

30. I understand that the NLRB is seeking nationwide administrative remedies that would have an impact at all facilities across the country, including by requiring meetings, postings, and communications involving SpaceX management. These remedies would also require the reformation of agreements which were already entered into with current and former SpaceX employees. These remedies would further cause disruption and a diversion of resources.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 25, 2024, in McGregor, Texas,

*BMlodzianowski.*

Bryanne-Michelle Mlodzianowski