```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                       WACO DIVISION

 3   SPACE EXPLORATION        *
        TECHNOLOGIES CORP.    *
 4                           *      July 10, 2024
     VS.                      *
 5                           * CIVIL ACTION NO. 6:24-CV-203
     NATIONAL LABOR RELATIONS*
 6      BOARD, ET AL.         *

 7            BEFORE THE HONORABLE ALAN D ALBRIGHT
                 PRELIMINARY INJUNCTION HEARING
 8
     APPEARANCES:
 9
     For the Plaintiff:   Michael E. Kenneally, Esq.
10                        Morgan, Lewis & Bockius LLP
                          DC Office
11                        1111 Pennsylvania Avenue, NW
                          Washington, DC 20004-2541
12
                          Catherine L. Eschbach, Esq.
13                        Stefanie R. Moll, Esq.
                          Morgan, Lewis & Bockius, LLP
14                        1000 Louisiana St., Suite 4000
                          Houston, TX 77002
15
                          Harry I. Johnson III, Esq.
16                        Morgan Lewis
                          2049 Century Park East, Suite 700
17                        Los Angeles, CA 90067-3109

18   For the Defendant:   David P Boehm, Esq.
                          National Labor Relations Board
19                        Contempt, Compliance and Special
                           Litigation Branch
20                        1015 Half St SE, 4th Floor
                          Washington, DC 20003
21
     Court Reporter:      Kristie M. Davis, CRR, RMR
22                        PO Box 20994
                          Waco, Texas 76702
23                        (254) 666-0904

24     Proceedings recorded by mechanical stenography,

25   transcript produced by computer-aided transcription.
```

01:53   1                    (Hearing begins.)

01:53   2                    DEPUTY CLERK:  A civil action in Case

01:53   3    6:24-CV-203, Space Exploration Technologies Corp.

01:53   4    versus National Labor Relations Board, et al.  Case

01:53   5    called for a preliminary injunction hearing.

01:53   6                    THE COURT:  Announcements from counsel,

01:53   7    please.

01:53   8                    MR. KENNEALLY:  Good afternoon, Your

01:53   9    Honor.  Michael Kenneally on behalf of SpaceX.

01:53   10                   MS. ESCHBACH:  Catherine Eschbach on

01:53   11   behalf of SpaceX.

01:53   12                   MS. MOLL:  Stefanie Moll on behalf of

01:53   13   SpaceX.

01:53   14                   MR. BOEHM:  David Boehm on behalf of the

01:54   15   defendants.

01:54   16                   MR. JOHNSON:  Excuse me, Your Honor.

01:54   17   Harry Johnson on behalf of SpaceX.

01:54   18                   THE COURT:  Okey dokey.  We'll start with

01:54   19   the motion for injunction.  And what would help me is

01:54   20   if you could as clearly as possible articulate on the

01:54   21   record kind of the scope of the injunction that you're

01:54   22   seeking.

01:54   23                   MR. KENNEALLY:  Thank you, Your Honor.  I

01:54   24   would start with that then.

01:54   25                   THE COURT:  And also -- I'm sorry to

01:54  1    interrupt you.  With regard to the exhibits, I

01:54  2    understand there's a fight over them.  I'm going to --

01:54  3    I think there's six exhibits.  I'm going to allow them

01:54  4    to be used in the hearing.

01:54  5              MR. KENNEALLY:  Great.  Thank you, Your

01:54  6    Honor.  That was also going to be where I was going to

01:54  7    start.  And unless there are other evidentiary issues

01:54  8    that opposing counsel intends to raise, we think that

01:54  9    the issues can be decided on the exhibits already in

01:54  10   the record and based on the parties' legal arguments

01:54  11   today.  And we'll proceed on that basis unless told

01:55  12   otherwise.

01:55  13             Your Honor, just to start where Your

01:55  14   Honor started, we believe that an appropriate

01:55  15   injunction in this case would be purely targeted to the

01:55  16   administrative proceeding in NLRB Case No. 19-CA-309274

01:55  17   which is at -- cited at -- in Paragraph 30 of our

01:55  18   complaint.  That is the administrative proceeding that

01:55  19   is at issue here involving separation agreements and

01:55  20   arbitration agreements, and we think that the

01:55  21   preliminary injunction would simply direct the

01:55  22   defendants in this action to cease processing that case

01:55  23   until further order of this Court.  And I think that

01:55  24   that would do the trick.

01:55  25             We're not asking for a broad injunction

01:55   1   against all agency proceedings.  If everybody -- or

01:55   2   even all agency proceedings against SpaceX.  We think

01:55   3   that the injunction here is appropriately targeted to

01:56   4   that particular administrative law proceeding.

01:56   5           I'm happy to field any other questions if

01:56   6   Your Honor has at the outset, and if not, I have a few

01:56   7   remarks that I'd like to make on the first, third and

01:56   8   fourth preliminary injunctive motion factors, and then

01:56   9   of course permission -- my colleague Catherine Eschbach

01:56   10  will handle the second which goes to irreparable

01:56   11  injury.

01:56   12          The Fifth Circuit has recognized that

01:56   13  likelihood of success is the most important of the

01:56   14  preliminary injunction factors.  Our complaint asserts

01:56   15  two removable protection claims and we have moved for a

01:56   16  preliminary injunction based upon both.  We are likely

01:56   17  to succeed on both, but I'll start with our claim

01:56   18  challenging the multiple errors of removal protections

01:56   19  for NLRB administrative law judges.  I'll just call

01:56   20  them ALJs.

01:56   21          Fifth Circuit precedent makes our

01:56   22  likelihood of success on this claim open and shut.

01:56   23  Defendants have not disputed that the Fifth Circuit's

01:57   24  decision in Jarkesy involving SEC ALJs is binding

01:57   25  precedent in this circuit.  They haven't argued the

01:57  1   Supreme Court's affirmance of that decision somehow

01:57  2   alters its status as binding precedent, nor have they

01:57  3   argued that there's any basis to distinguish Jarkesy

01:57  4   based on some difference between NLRB ALJs and SEC

01:57  5   ALJs.  And that's for good reason.  In Jarkesy the

01:57  6   Fifth Circuit set forth a simple rule.  If ALJs are

01:57  7   inferior officers under Article 2, they have enough of

01:57  8   a role in the execution of the laws that multiple

01:57  9   layers of removal protection make them insufficiently

01:57  10  accountable to the president.

01:57  11          In determining whether SEC ALJs were

01:57  12  inferior officers, the Fifth Circuit looks to the

01:57  13  Supreme Court's analysis in Lucia versus SEC, and that

01:57  14  approach makes this Court's task straightforward

01:57  15  because the NLRB itself has already recognized that

01:57  16  ALJs are inferior officers under Lucia.  And that's in

01:57  17  the Westrock Services case from the NLRB that we cited

01:58  18  where the Court said there's no meaningful distinction

01:58  19  between the SEC ALJs and NLRB ALJs for the Lucia

01:58  20  analysis.

01:58  21          So just like the SEC ALJs, NLRB ALJs

01:58  22  exercise enough of an executive function that they may

01:58  23  not be subject to multiple layers of removal

01:58  24  protection.  Just like the SEC ALJs, they are.  The

01:58  25  ALJs are protected from removal.  The MSPB various

01:58  1    protection board members are protected from removal and

01:58  2    the National Labor Relations Board, NLRB, members are

01:58  3    protected from removal.  So we are likely to succeed on

01:58  4    this claim, but this arrangement of multilayer removal

01:58  5    protection is unconstitutional.

01:58  6         Defendants' only argument against our

01:58  7    likelihood of success on this claim is that we

01:58  8    additionally need to show that our ALJ would have been

01:58  9    removed but for the removal protection such as the

01:58  10   heading at Page 16 of their opposition brief, but

01:58  11   that's not the law of the Fifth Circuit.

01:58  12        Defendants derive that requirement from

01:58  13   the Supreme Court's decision in Collins versus Yellen,

01:59  14   but as the en banc Fifth Circuit explained a few years

01:59  15   later in Cochran versus SEC, Collins governs when a

01:59  16   litigant is seeking to void an agency action based on

01:59  17   removal protections, but it does not apply when a

01:59  18   litigant, quote, seeks administrative adjudication

01:59  19   tainted -- untainted -- excuse me -- by

01:59  20   separation-of-powers violations.  That's Footnote 16.

01:59  21        So -- and also neither the Supreme Court

01:59  22   in Free Enterprise Fund nor the Fifth Circuit in

01:59  23   Jarkesy required that additional showing of but for

01:59  24   causation in declaring that the officers in those cases

01:59  25   were unlawfully protected from removal by the

01:59  1   president.  So there is no reason to impose that

01:59  2   additional requirement here.

01:59  3           While our likelihood of success on the

01:59  4   ALJ removal protection claim is sufficient to justify

01:59  5   the injunction we seek, we are also likely to succeed

01:59  6   on our NLRB members' claim.  Defendants fail to grapple

01:59  7   with the NLRB's unique structure which does invest all

02:00  8   of its power in the multi member head of the five

02:00  9   member board.  Instead, it spreads executive power

02:00  10   between the board members and its politically

02:00  11   accountable general counsel which, as the Fifth Circuit

02:00  12   held in Exela Enterprises, is an officer who is subject

02:00  13   to removal by the president without cause.

02:00  14           Now, the general counsel exercises some

02:00  15   prosecutorial functions for the board.  The board

02:00  16   members exercise prosecutorial functions as well.  And

02:00  17   that's most clear in Section 10(j) of the NLRA which is

02:00  18   29 USC 160(j) which gives the board prosecutorial

02:00  19   authority to bring action in federal court.

02:00  20           The Fifth Circuit addressed that

02:00  21   provision in Overstreet versus El Paso Disposal and in

02:00  22   that case recognized that that authority belongs to the

02:00  23   board itself in the first instance and defendants'

02:00  24   prosecutorial function.

02:00  25           And in addition, a second distinguishing

02:01  1    feature of the NLRB as opposed to the FTC is that the

02:01  2    NLRB's removal protections are stricter than the ones

02:01  3    that the Supreme Court upheld for the SEC in Humphrey's

02:01  4    Executor.

02:01  5              The Humphrey's Executor removal

02:01  6    restriction allowed removal for inefficiency, neglect

02:01  7    of duty or malfeasance in office, but the NLRB board

02:01  8    members are removable for neglect of duty or

02:01  9    malfeasance of office but for no other cause.  So that

02:01  10   means that inefficiency is out and a board member who's

02:01  11   merely doing a poor job cannot be removed by the

02:01  12   president because that is not one of the specified

02:01  13   causes.  You have to rise to the level of neglect or

02:01  14   malfeasance.

02:01  15             And as a result, the Court would have to

02:01  16   extend Humphrey's Executor in order to find that the

02:01  17   removal protections for the board members, strict as

02:01  18   they are, in the context of the NLRB's unique structure

02:01  19   are lawful under Seila law and the Supreme Court's

02:01  20   other recent cases.

02:01  21             Before I hand over the mic, I want to say

02:01  22   a brief word about the third and fourth preliminary

02:02  23   injunction factors, and I can be brief on this issue

02:02  24   because the government has no legitimate interest in

02:02  25   proceeding in an unconstitutional manner.  And its

02:02  1    doing so is very much against the public interest.

02:02  2              Sure, the board has an interest in

02:02  3    enforcing the federal labor law statute, but that

02:02  4    interest can't override compliance with the

02:02  5    Constitution, as the ends don't justify the means.  And

02:02  6    the Fifth Circuit's recent decision in BST Holdings

02:02  7    versus OSHA recognizes this point.  An agency's

02:02  8    interest in acting unlawfully and unconstitutionally is

02:02  9    illegitimate and the public has an interest in

02:02  10   maintaining our constitutional structure despite the

02:02  11   agency's broader objectives.

02:02  12             So for these reasons, we think Factors 1,

02:02  13   3 and 4 all weigh in our favor, and I'm happy to turn

02:02  14   over the mic to Ms. Eschbach to talk about -- unless

02:02  15   the Court has further questions for me.

02:02  16             THE COURT:  Let me ask you this:  Would

02:02  17   you prefer to argue on each point one at a time or

02:02  18   would you rather have them finish and go all at once?

02:03  19             MR. BOEHM:  I would prefer to go all at

02:03  20   once.

02:03  21             THE COURT:  Okay.  That'll be fine.

02:03  22             Yes, ma'am.

02:03  23             MS. ESCHBACH:  Thank you, Your Honor.

02:03  24             I'm going to be addressing the second

02:03  25   factor of irreparable harm.

02:03   1              Axon makes this a much simpler case than
02:03   2   what the NLRB would represent to this Court.  In Axon
02:03   3   it holds that a proceeding in front of an illegitimate
02:03   4   decisionmaker is a here-and-now injury that is
02:03   5   impossible to remedy once the proceeding is over.
02:03   6              It also states that once a proceeding has
02:03   7   already happened, it cannot be undone.  Judicial review
02:03   8   would come too late to be meaningful.
02:03   9              Under Fifth Circuit precedent -- and we
02:03   10  cited this in our brief, Daniels Health Science -- all
02:03   11  that you have to show to show irreparable harm is that
02:03   12  there's harm for which there's no adequate remedy at
02:04   13  law.
02:04   14             Axon says there's a here-and-now injury.
02:04   15  It also says that it is impossible to remedy once the
02:04   16  proceeding is over.
02:04   17             Deerfield Medical Center, which is Fifth
02:04   18  Circuit precedent as well, states that depravation of
02:04   19  constitutional rights is irreparable harm even if it
02:04   20  occurs for a minimal time.
02:04   21             What we are here asking the Court today
02:04   22  is to enter a preliminary injunction until this case
02:04   23  can be resolved on the merits so this Court can
02:04   24  determine what that appropriate type of relief is to
02:04   25  fashion.

02:04  1           The NLRB would have this Court believe

02:04  2  that because they think this can be severed, any deep

02:04  3  constitutional defect is subject to severance.  He

02:04  4  can't show irreparable harm.  But that is a question

02:05  5  for the merits remedy stage.  They don't dispute that

02:05  6  under Doran there is no such thing as a preliminary

02:05  7  declaration.  This Court cannot say, I can sever this

02:05  8  and so there's not going to be any harm.

02:05  9           Free Enterprise Fund holds that we are

02:05  10  entitled to a declaration that -- that ensures that the

02:05  11  standards to which we are a subject in this proceeding

02:05  12  will only be enforced by a constitutional agency

02:05  13  accountable to the executive.

02:05  14           Now, my colleague Michael has already

02:05  15  touched on the other point that they raised which is

02:05  16  the Collins versus Yellen point.  In our view, the

02:05  17  Fifth Circuit en banc court has already decided that

02:05  18  Collins does not apply here.  That's Footnote 6 of

02:06  19  their decision.

02:06  20           And as discussed in our supplemental

02:06  21  briefing that we submitted yesterday, on Jarkesy, the

02:06  22  Cochran case was affirmed by the U.S. Supreme Court

02:06  23  under Axon.  But Axon did not in any way disturb the

02:06  24  holding of Footnote 16 which distinguishes between when

02:06  25  a litigant is seeking to void the acts of the

02:06  1    illegitimate officer and when a litigant is seeking an

02:06  2    administrative communication untainted by separation of

02:06  3    powers violations.

02:06  4              We are not seeking to void any act here.

02:06  5    In fact, it would be quite odd because no proceeding

02:06  6    has taken place, so there is no act for us to go back

02:06  7    to.  What we are seeking is a proceeding that is

02:06  8    entirely untainted by constitutional infirmity.

02:06  9              So we believe that this Court is bound by

02:07  10   what the Fifth Circuit has said on this which is that

02:07  11   the Collins analysis is not the analysis that applies

02:07  12   here.  We believe that this is a Free Enterprise Fund

02:07  13   case and what this Court needs to do is pause the

02:07  14   status quo until it can get to a merits determination

02:07  15   and figure out what the appropriate remedy is there.

02:07  16             For this reason, also, the recent Fifth

02:07  17   Circuit cases that NLRB has cited such as Community

02:07  18   Financial Services Association and Collins versus

02:07  19   Department of Treasury are inapposite because those are

02:07  20   also cases in which they are seeking to void an act.

02:07  21             Now, I want to say a little bit on the

02:07  22   prospective retrospective relief point that they cite

02:07  23   to.  Again, that is in the context of a rule that has

02:07  24   already been issued.  And so they are seeking to enjoin

02:08  25   prospective enforcement.  Those cases were not

02:08  1    scenarios where they were trying to stop the rule

02:08  2    making from going forward under the illegitimate

02:08  3    decisionmaker in the first place which is what we have

02:08  4    here.

02:08  5              Nor is this harm speculative.  The NLRB

02:08  6    administrative proceeding here is still on the

02:08  7    calendar.  As my friend Mr. Boehm represented at the

02:08  8    Tuesday hearing, they're contemplating when this can

02:08  9    possibly move forward again.  He said it would move

02:08  10   forward no earlier than October, but that's when our

02:08  11   original date is -- was.  October 29th.

02:08  12             If Your Honor's not familiar with how

02:08  13   these proceedings play out at the administrative stage,

02:08  14   prior to the hearing opening before the ALJ, there's

02:08  15   often motion practice, discovery, all things which an

02:08  16   ALJ is going to need to decide.

02:08  17             I can represent here that SpaceX at some

02:09  18   point in that proceeding in the months going forward

02:09  19   would be moving to dismiss on jurisdictional grounds

02:09  20   and an ALJ would have to decide that motion.

02:09  21             In tying in the board members as well,

02:09  22   the board members play roles before the ALJ proceeding.

02:09  23   They sign the subpoenas.

02:09  24             In the motions practice there's possibly

02:09  25   a special appeal.

02:09  1          And so even if a hearing date is
02:09  2  postponed, there are things that SpaceX needs to know
02:09  3  whether it should act on in that proceeding that will
02:09  4  depend on whether or not an injunction issues here.
02:09  5          Going to the other forms of relief or the
02:09  6  other forms of irreparable harm discussed in our brief
02:09  7  in the Mlodzianowski declaration, to be clear, we view
02:09  8  this as a belts and suspenders.  We think based off the
02:09  9  Axon alone, the scheduling of the hearing with the ALJ
02:09  10  who's unconstitutionally insulated and the whole
02:10  11  proceedings in front of the board show irreparable
02:10  12  injury under Supreme Court and Fifth Circuit precedent.
02:10  13  However, these forms of harm set out in her declaration
02:10  14  are additional ways that the proceeding would harm us.
02:10  15  The costs will never be recovered.  These are not
02:10  16  typical litigation costs.  We're not saying we should
02:10  17  be prevented from having the costs come into court to
02:10  18  get the injunction.  We are saying if there isn't an
02:10  19  illegitimate proceeding going forward, we don't have to
02:10  20  prepare for it.  We don't have to spend that money.
02:10  21  SpaceX isn't having irreparable harm to its reputation
02:10  22  which the Fifth Circuit in Burgess versus FDIC has held
02:10  23  that that is sufficient to satisfy any irreparable
02:10  24  injury and that a party should not have to go forward
02:10  25  in an illegitimate proceeding to clear their name.

02:11   1          And so we think that we have sufficiently

02:11   2   proved up through the evidence we have submitted that

02:11   3   SpaceX will in fact suffer irreparable harm because the

02:11   4   proceeding as a whole is illegitimate and we have the

02:11   5   right to have a proceeding free from that taint of

02:11   6   illegitimacy on the front end.

02:11   7          Now, just one final word on the severance

02:11   8   points.  Again, as I mentioned earlier, we do not

02:11   9   believe that severance is for the Court at this

02:11   10  juncture.  However, I want to point out --

02:11   11         THE COURT:  I'm -- either I didn't follow

02:11   12  you or you maybe left a word out.  Could you go back

02:11   13  about two sentences and -- I didn't follow what you

02:11   14  said.

02:11   15         MS. ESCHBACH:  Sorry, Your Honor.

02:11   16         One final word on the severance point, to

02:11   17  be clear, we do not believe severance is before the

02:11   18  Court at this juncture.  However, I would like to call

02:12   19  this Court's attention to Footnote 49 of that NLRB's

02:12   20  response where they say this Court need not decide now

02:12   21  precisely how it would sever the statute in order to

02:12   22  find that SpaceX is not entitled to the requested

02:12   23  injunctive relief.  This is absolutely incorrect, as we

02:12   24  laid out in our brief.  The severance questions here

02:12   25  are quite tricky.  If I were to take off my advocate

02:12   1   hat and put on my objective hat, I don't honestly know

02:12   2   how you solve the problem of what Congress would have

02:12   3   wanted you to sever here.

02:12   4                   And so I think the representation that

02:12   5   you can just say, oh, this is severable without

02:12   6   figuring out how you would actually sever it, should

02:12   7   the Court decide it needs to do that, is highly

02:12   8   problematic because until this Court figures out how it

02:12   9   would sever it, it cannot in fact figure it out that --

02:12   10  whether severance would even be appropriate here or

02:13   11  whether this is something that needs to go back to

02:13   12  Congress.

02:13   13                  And so as I said, we don't think the

02:13   14  Court needs to get there on this motion, but if this

02:13   15  Court is inclined to do so, it can't just take the

02:13   16  NLRB's word that it can sever this and solve any

02:13   17  constitutional harm to us.  This Court would need to

02:13   18  make a determination whether in fact severance would be

02:13   19  appropriate here.

02:13   20                  Unless the Court has any further

02:13   21  questions.

02:13   22                  THE COURT:  I don't.

02:13   23                  MS. ESCHBACH:  Thank you.

02:13   24                  MR. BOEHM:  Good afternoon, Your Honor.

02:13   25                  Let me give you the bottom line up front

02:13  1    here.  SpaceX presents two claims in this case:  That

02:14  2    board members are unconstitutionally shielded from

02:14  3    removal by the president and that ALJs are likewise

02:14  4    shielded from removal by the executive.

02:14  5              SpaceX failed to state a claim on either

02:14  6    count because it fails to even plead much less prove up

02:14  7    the elements necessary to show our right to relief for

02:14  8    an officer removal claim.  Those are a substantiated

02:14  9    desire by the president to remove the officer of

02:14  10   perceived inability to remove that officer and nexus

02:14  11   between that desire and the challenged action.

02:14  12             The Fifth Circuit recently held this in

02:14  13   the CFS -- I'm sorry -- CFSA case, and that's

02:14  14   determinative here.

02:14  15             Because SpaceX failed to make out a --

02:14  16   these requirements of causal harm, it both loses on the

02:14  17   merits of its claims and cannot succeed to show that it

02:14  18   would suffer irreparable harm because it has no legal

02:15  19   injury.

02:15  20             SpaceX's only response on this point is

02:15  21   to say that these requirements don't apply to it

02:15  22   because the holding in CFSA dealt with a rule as

02:15  23   opposed to an adjudication, but there's nothing in the

02:15  24   reasoning of that decision to suggest that the elements

02:15  25   necessary to make out a removal claim depend on the

02:15    1    type of action that's being challenged.

02:15    2                    As to its likelihood of success on the

02:15    3    board member removability claim, this is foreclosed by

02:15    4    the Fifth Circuit's recent decision in Consumers'

02:15    5    Research cited in the papers which reaffirms validity

02:15    6    of Humphrey's Executor for any, quote, traditional

         7    multi member agency.

02:15    8                    Now, SpaceX tries to quibble over the

02:15    9    types of protections that were involved in Humphrey's

02:16    10   Executor, but Consumers' Research involved the exact

02:16    11   same types of protections that NLRB members enjoy.

02:16    12                   I would also note that the scholarly

02:16    13   article we cited in our opposition discussed the issue

02:16    14   of inefficiency.  That's a 19th century addition that

02:16    15   dealt with patronage problems.  It's not necessary to

02:16    16   any responsibility under the take care clause.

02:16    17                   The traditional two requirements of --

02:16    18   that would allow removal for malfeasance in office for

02:16    19   neglect of duty are adequate to satisfy that

02:16    20   constitutional requirement.

02:16    21                   As to their claim about the

02:16    22   responsibility of board members under Section 10(j),

02:17    23   I'd like to note that there's no 10(j) issue in this

02:17    24   case.  It's a commonplace observation that you have to

02:17    25   have subject-matter jurisdiction for reform or relief

02:17   1   you're seeking.  And the fact that there may be some

02:17   2   other action that an officer might do in some other

02:17   3   case does not support relief here.  So the 10(j) issue

02:17   4   is a red herring.

02:17   5               So even if -- let me just make sure I'm

02:17   6   not -- as to the issue about SEC's ALJs, we don't have

02:17   7   to reach that here.  There are some differences as

02:17   8   noted in the Jarkesy Supreme Court decision.  SEC's

02:17   9   ALJs can adjudicate penalties.  They can adjudicate

02:18   10  things that resemble common-law claims which are not

02:18   11  the types of claims that are adjudicated by the Court.

02:18   12  But that's not something the Court needs to address in

02:18   13  this posture.

02:18   14              Even if success on the merits were

02:18   15  assumed here, SpaceX cannot show any irreparable harm.

02:18   16  And this is fatal to their injunction.  Their first

02:18   17  attack is to try to conflate the observations that an

02:18   18  unconstitutional decisionmaker presents a here-and-now

02:18   19  injury from Axon to establish that that's a per se

02:18   20  irreparable harm.

02:18   21              As the Tenth Circuit recently noted in

02:18   22  the Leachco case, however, this is not supported by

02:18   23  that case law.  And it doesn't make sense on its own

02:18   24  terms.  If any challenged action were irreparable and

02:18   25  it allowed you to get an injunction, we'd be down the

02:18    1    road of any property forfeiture or anything that was

02:19    2    arguably a violation of some of these constitutional

02:19    3    rights supporting injunctive relief, and that can't be.

02:19    4               I would also note that the types of cases

02:19    5    where a party who was only entitled to legal relief

02:19    6    like declaratory relief could obtain a preliminary

02:19    7    injunction, and they cite Doran and I believe there's a

02:19    8    couple of others, only deal with situations where

02:19    9    there's ruinous consequences that would prevent the

02:19   10    Court from actually reaching a final decision.  I think

02:19   11    in Doran that the party would have been rendered

02:19   12    bankrupt.  There was another case involving a party

02:19   13    that would have had to cease doing business.  And then

02:19   14    I think there was another case Mississippi Power &

02:19   15    Light they cited that was not on point.  It had to do

02:19   16    with the ability of the Court that -- it seemed to be

02:19   17    an issue of practicality in that case of being able to

02:19   18    actually craft a remedy even though there was an

02:19   19    undisputed legal claim.

02:20   20               So that does not follow the fact that

02:20   21    there's no declaratory -- there's no interim

02:20   22    declaratory relief entitles you to an injunction.  It

02:20   23    just doesn't.  It doesn't follow.

02:20   24               Similarly in Burgess, that dealt with a

02:20   25    case where under securities regulations the person

02:20  1  would have been out of a job.  They wouldn't have been

02:20  2  able to find employment in their profession if the

02:20  3  proceeding had been allowed to go forward and stand.

02:20  4       And that sort of blends into the other

02:20  5  weaknesses in their irreparable harm claims here.  They

02:20  6  are entirely speculative.  First of all, as to the

02:20  7  issue of having to defend yourself in an administrative

02:20  8  proceeding, there's long-standing case law in the

02:20  9  Supreme Court FTC versus Standard Oils, the lead case,

02:21  10  saying that having to defend yourself before a

02:21  11  government proceeding is not irreparable harm.

02:21  12       And people made similar claims in the

02:21  13  earliest days of NLRA and the Fifth Circuit guided them

02:21  14  down.  I believe we cited cases from 1936 explaining

02:21  15  that this is not the sort of harm that equity will

02:21  16  interfere to prevent.

02:21  17       As to their supposed reputational harm or

02:21  18  their ability to recruit and retain talent or obtain

02:21  19  government contracts, there's exactly zero facts behind

02:21  20  any of those assertions.  All we have is a statement

02:21  21  from a person who appears to have no direct knowledge

02:21  22  of any facts that would support that.  So they fail to

02:21  23  make out any showing of harm on that front.

02:21  24       As to the cases showing that, you know,

02:21  25  even short constitutional depravations can provide

02:22  1    harm, first of all, most of those cases involve

02:22  2    standing.

02:22  3              But the other thing I would note is that

02:22  4    all those cases that I'm aware of involve individual

02:22  5    rights.  Usually it's a freedom of speech claim or

02:22  6    religious freedom claim.  Certain privacy claims, cases

02:22  7    involving abortion, fall into that category as well.

02:22  8              So the only -- the only harm they can

02:22  9    come up with here is having to defend themselves before

02:22  10   an administrative agency in a case that -- you know,

02:22  11   they make some discussion about distraction from their

02:22  12   mission.  This case would involve no witness testimony

02:22  13   that we're aware of.  This could be decided on the

02:22  14   papers.  It's about the validity under the NLRA of

02:23  15   proffered agreements, arbitration and separation

02:23  16   agreements.  So the burden on SpaceX is minimal here

02:23  17   and would be undertaken likely solely by their

02:23  18   attorneys.

02:23  19              I want to correct a couple of

02:23  20   misstatements.  The discussion that we were

02:23  21   contemplating when we could -- when we could put this

02:23  22   case back on the calendar is not true.  We inquired and

02:23  23   we were told that there was no date available before

02:23  24   the October date, and in any event, they wouldn't be

02:23  25   able to schedule it before then.  And that was just for

02:23   1    our information going to the last hearing in this case.

02:23   2              As so the discussion of -- there's one

02:23   3    rather actually glaring misstatement of the law I want

02:23   4    to point out in the reply, and it involved -- let me

02:24   5    see if I can find it here.  It involved the discussion

02:24   6    of removability claims as opposed to officer

02:24   7    appointment claims, and it conflated the two.  And it

02:24   8    was a discussion of the case in SpaceX versus Bell.

02:24   9              So I believe it was on Page 7 of their

02:24   10   reply.  I can address that -- I'm sorry -- after I've

02:24   11   returned to my counsel table.

02:24   12             As to the final two factors, as we laid

02:25   13   out in the briefs that the law enforcement function of

02:25   14   the board is important both for employees to know that

02:25   15   their rights are protected in the workplace.  But on a

02:25   16   broader scale, these types of challenges, if they're

02:25   17   allowed to go forward, are just going to bring more

02:25   18   people to the floor and they're going to essentially

02:25   19   subject the board's proceeding to a preclearance

02:25   20   requirement, and that is not in the public interest.

02:25   21             And I'd be happy to answer any questions.

02:25   22             THE COURT:  Okay.

02:25   23             MR. KENNEALLY:  Your Honor, I just wanted

02:26   24   to make a few points in rebuttal if I may on the

02:26   25   likelihood of success point that opposing counsel

02:26   1   raised.

02:26   2                 We think that the claims with respect to

02:26   3   NLRB members fall squarely within the exception in

02:26   4   Consumers' Research that Mr. Boehm was talking about

02:26   5   because in that case the Court was dealing with the

02:26   6   Consumer Product Safety Commission which it noted was

02:26   7   traditionally structured.  Here, as we've argued, the

02:26   8   NLRB is not traditionally structured in the way that

02:26   9   the CAPSC is because it divides this authority between

02:26   10  politically accountable general counsel and the board

02:26   11  members.  And some of the board members' authority is

02:26   12  prosecutorial, nothing executive in nature.

02:26   13                And we're not raising a claim about the

02:26   14  board's Section 10(j) authority or the

02:26   15  constitutionality of that authority in this case.  So

02:26   16  it's not a red herring.  What it is relevant to is what

02:27   17  sort of authority the board exercises, and answering

02:27   18  that question is essential in order to know whether the

02:27   19  removal protections are unlawful under the Supreme

02:27   20  Court's text.

02:27   21                The argument that there is an element to

02:27   22  a removal protection claim, that there must be a

02:27   23  substantial desire to remove the -- substantiated

02:27   24  desire to remove the relevant officer and that that

02:27   25  desire has been frustrated because of the removal

02:27  1    protections, that is not true.  That line of cases, as

02:27  2    we've already discussed it but today, from the Collins

02:27  3    versus Yellen decision and the Fifth Circuit has not

02:27  4    applied that in the context of what I'll just call an

02:27  5    Axon proceeding where a plaintiff is coming into court

02:27  6    and asking for relief so it doesn't have to undergo an

02:27  7    unconstitutionally structured administrative

02:27  8    proceeding.

02:27  9              Also the FTC versus Standard Oil case

02:27  10   that opposing counsel referenced which talks about

02:28  11   irreparable harm in the context of agency proceedings.

02:28  12   It wasn't dealing with the irreparable harm that comes

02:28  13   from undergoing unconstitutionally structured

02:28  14   administrative agency proceedings.  And I just don't

02:28  15   understand how the Supreme Court could hold in Axon and

02:28  16   the Fifth Circuit en banc could hold in Cochran that

02:28  17   having to undergo administrative proceedings is injury

02:28  18   and it can't be repaired afterwards is somehow not up

02:28  19   to the level of irreparable injury.  By definition

02:28  20   that's irreparable injury.

02:28  21              In the Bell case which Mr. Boehm referred

02:28  22   to, while it did grant relief on an appointments clause

02:28  23   claim rather than a removal protection claim, it

02:28  24   specifically cited the Axon case in addressing

02:28  25   irreparable injury, and that is fully consistent with

02:28    1    Cochran as well and with Fifth Circuit case law.

02:28    2              The Tenth Circuit's decision in Leachco

02:28    3    didn't apply.  The Cochran case that's obviously

02:28    4    binding here is an en banc Fifth Circuit decision.  It,

02:28    5    instead, misconstrued Consumers' Research which, as

02:29    6    Ms. Eschbach pointed out, is about prospectively

02:29    7    enjoining a rule that was issued by a protected agency

02:29    8    decisionmaker.  That is a scenario where the Collins

02:29    9    versus Yellen requirement for causal harm comes into

02:29   10    play because the litigant is attempting to undo or at

02:29   11    least nullify the effect of something that has already

02:29   12    taken place.  And that is what is not allowed.

02:29   13              But in Free Enterprise Fund and in Axon

02:29   14    and in Cochran, the Supreme Court has said if there is

02:29   15    an unconstitutionally structured agency proceeding, a

02:29   16    litigant has a right before undergoing it to get that

02:29   17    constitutional problem addressed if it can be

02:29   18    addressed.

02:29   19              The idea that recognizing that clear

02:29   20    implication of Axon would open the floodgates to all

02:29   21    sorts of unconstitutional rights violations isn't

02:29   22    correct.  It's not just any violation of constitutional

02:29   23    rights that would support a preliminary injunction

02:30   24    because you would also need to show that you can't

02:30   25    repair that violation of constitutional rights at the

02:30    1    end through monetary leave.

02:30    2                    So, for example, if the government takes

02:30    3    my property, I can't go into court to preliminarily

02:30    4    enjoin necessarily if I can be made whole at the end of

02:30    5    the proceeding through damages.

02:30    6                    Here, however, under Axon, that

02:30    7    constitutional violation cannot be remedied after the

02:30    8    fact and therefore the requirements for injunctive

02:30    9    relief are met.

02:30    10                   I don't think there's any basis to limit

02:30    11   the irreparable injury analysis to what Mr. Boehm

02:30    12   called individual rights because constitutional rights

02:30    13   are constitutional rights, and, again, in Axon the

02:30    14   Supreme Court concluded that that sort of the right at

02:30    15   issue here not being required to undergo

02:30    16   unconstitutionally structured proceedings is an

02:30    17   important constitutional right in its own respect.  And

02:30    18   if that is true, it cannot be repaired, violations of

02:31    19   that right cannot be repaired after the fact, then it

02:31    20   is irreparable injury.

02:31    21                   Unless the Court has any questions for

02:31    22   me, I'll cede the podium.  Thank you.

02:31    23                   THE COURT:  Yes, sir.

02:31    24                   Is your point that there is no

02:31    25   constitutional injury, that if there is a

02:31  1    constitutional injury, that's not irreparable harm, or

02:31  2    a combination?  I'm not sure I'm following you.

02:31  3                    MR. BOEHM:  I mean, I think it's -- I

02:31  4    think it's both.  They haven't made out the claim

02:31  5    necessary to establish an injury, but even if they

02:31  6    could succeed on the merits of their claim, it's not

02:31  7    the type of relief for which an injunction is available

02:31  8    because, you know, my learned friend here mentioned

02:32  9    Free Enterprise Fund.  It's not as if the Supreme Court

02:32 10    hasn't thought about the issue of remedy.  They did

02:32 11    think about it and they said you're entitled to a

02:32 12    declaratory ruling.

02:32 13                    So I think that --

02:32 14                    THE COURT:  What would the relief be?

02:32 15                    MR. BOEHM:  As we discussed, it would be

02:32 16    a declaration probably severing the statute.  The exact

02:32 17    scope of that severance is something that we'd have

02:32 18    to -- you know, would be for the Court to decide, but

02:32 19    that is the type of remedy that the Supreme Court has

02:32 20    endorsed in these cases.

02:32 21                    THE COURT:  Could I hear a response to

02:32 22    that?

02:32 23                    And then you're welcome to say anything

02:32 24    else you might want to in rebuttal.

02:32 25                    MR. KENNEALLY:  So assuming that the

02:32  1    Court could perform a severability analysis and come to

02:32  2    the conclusion that Congress would have intended this

02:32  3    or that removal protection to be severed in order to

02:32  4    cure the constitutional violations, Ms. Eschbach

02:33  5    pointed out, we think that that's actually a virtue of

02:33  6    the analysis here because you need to -- the multiple

02:33  7    layers of removal of protection that are the

02:33  8    constitutional problem for the ALJs and there are three

02:33  9    possible removal protections on the chopping block as

02:33  10   it were.  There are the ALJs, the NLRB members and the

02:33  11   MSPB members.  And so figuring out which two of the

02:33  12   three Congress would have wanted to go is very

02:33  13   difficult especially because ALJs by design are

02:33  14   supposed to be independent from their agencies and SPB

02:33  15   members are supposed to be independent from the

02:33  16   president and NLRB members are supposed to be

02:33  17   independent from the president.  You have to knock out

02:33  18   two of those three and decide if Congress would have

02:33  19   wanted that.

02:33  20            But the real key point here I think is

02:33  21   that as tricky as that analysis is, that is still a

02:33  22   victory for SpaceX because it concedes that there is a

02:33  23   constitutional problem as the agency is currently

02:33  24   structured.  So in Free Enterprise Fund, the challenger

02:34  25   there won the case and got that declaratory relief.  So

02:34  1  that can't possibly be an impediment to our succeeding

02:34  2  on the merits.

02:34  3           And if that severability analysis could

02:34  4  be achieved, we would still be undergoing irreparable

02:34  5  harm until it happened.  And that's why we think to

02:34  6  preserve the status quo, the injunction is warranted.

02:34  7           THE COURT:  Well, so counsel just argued

02:34  8  the harm is not irreparable.

02:34  9           MR. KENNEALLY:  Right.  And that's what

02:34  10  I'm saying is it isn't consistent with Axon because the

02:34  11  harm here in this type of structural constitutional

02:34  12  challenge is having to undergo the illegitimate

02:34  13  proceeding before the illegitimate decisionmaker, and

02:34  14  that can't be -- that Genie can't be put back in the

02:34  15  bottle at the end even if we get a piece of paper that

02:34  16  says, oh, by the way, all along the president had the

02:34  17  ability to fire this, that or the other official and no

02:34  18  one knew it, but, you know, congratulations.  Here's

02:34  19  your piece of paper.  That has to happen to be

02:34  20  meaningful if -- assuming it could be severed -- any of

02:34  21  those could be severed before for the proceeding takes

02:35  22  place.  Otherwise this has no value.

02:35  23           THE COURT:  Understood.

02:35  24           MR. KENNEALLY:  Thank you.

02:35  25           THE COURT:  Is there anything else you

02:35   1   care to say?

02:35   2                 MR. BOEHM:  No.

02:35   3                 THE COURT:  Okay.  Anything else from you

02:35   4   all?

02:35   5                 MR. KENNEALLY:  No, Your Honor.

02:35   6                 (Off-the-record bench conference.)

02:36   7                 THE COURT:  The Court is going to grant

02:36   8   the injunction.

02:36   9                 We'll get a written order out hopefully

02:36   10   in due -- well, in due course but hopefully within a

02:36   11   couple of weeks if not sooner.

02:36   12                 Is there anything -- I'll start with

02:36   13   defendants.  Is there anything else we need to take up?

02:36   14                 MR. BOEHM:  I just wanted to correct my

02:36   15   one statement.  I said it was on Page 6.  It's on

02:36   16   Page 5 of their reply brief, the discussion of Bell.

02:36   17                 THE COURT:  Anything else?

02:36   18                 MR. BOEHM:  No.

02:36   19                 THE COURT:  Anything else from plaintiff?

02:36   20                 MR. KENNEALLY:  Nothing from us, Your

02:36   21   Honor.

02:36   22                 THE COURT:  Okay.

02:36   23                 (Hearing adjourned.)

        24

        25

1   UNITED STATES DISTRICT COURT )

2   WESTERN DISTRICT OF TEXAS      )

3

4

5              I, Kristie M. Davis, Official Court

6   Reporter for the United States District Court, Western

7   District of Texas, do certify that the foregoing is a

8   correct transcript from the record of proceedings in

9   the above-entitled matter.

10             I certify that the transcript fees and

11  format comply with those prescribed by the Court and

12  Judicial Conference of the United States.

13             Certified to by me this 12th day of July

14  2024.

15
                          */s/ Kristie M. Davis*
16                        KRISTIE M. DAVIS
                          Official Court Reporter
17                        PO Box 20994
                          Waco, Texas 76702
18                        (254) 666-0904
                          kmdaviscsr@yahoo.com
19

20

21

22

23

24

25